# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**RICHARD JARZYNKA**          Civil Action NO. 10-1594

    **Plaintiff**          **JUDGE JOY FLOWERS CONTI**

                         **JURY TRIAL DEMANDED**

    **v.**

**UPMC HEALTH SYSTEM**

    **Defendant**

## AMENDED COMPLAINT IN CIVIL ACTION

Pro Se Plaintiff, Richard Jarzynka, hereby files this Amended Complaint in Civil Action and demands judgment against Defendant, UPMC HEALTH SYSTEM. This AMENDED COMPLAINT adds two Federal Counts under 42 C.F.R 482.13(b), (e). Plaintiff complains against Defendants as follows:

## PARTIES

1.      Pro Se Plaintiff, Richard Jarzynka, is a 48 year-old, adult individual, who at all relevant times, has resided at 109 Crestwood Drive, Pittsburgh, PA 15209.

2.      Defendant, UPMC HEALTH SYSTEM, located at 200 Lothrop Street, Pittsburgh, PA 15213-2582, is a network of hospitals, research and treatment centers, and healthcare facilities that includes UPMC - Western Psychiatric Institute and Clinic.

### JURISDICTION

3.      Jurisdiction is based upon 28 U.S.C. Section 1331 as Count I raises a Federal Question under the Americans with Disabilities Act. This court has supplemental jurisdiction over the state claims of False Imprisonment and Battery based upon 28 U.S.C. Section 1367.

### VENUE

4.      Venue is appropriate in the Western District of Pennsylvania because both Plaintiff and Defendant are residents of the Western District of Pennsylvania. Plaintiff is a citizen of Pennsylvania, who currently, and at all times pertinent to this complaint, has resided in the Western District of Pennsylvania at 109 Crestwood Drive, Pittsburgh, PA 15209. Defendant, UPMC Health System, currently, and at all times pertinent to this complaint, has done business at 200 Lothrop Street, Pittsburgh, PA 15213, within the Western District of Pennsylvania. UPMC - Western Psychiatric Institute and Clinic ("WPIC") is a hospital within the UPMC HEALTH SYSTEM and, at

all times relevant to this Complaint, WPIC has been located at 3811 O'Hara Street, Pittsburgh, PA 15213-2593 within the Western District of Pennsylvania.

## STATEMENT OF FACTS

5.      **THE PENNSYLVANIA DEPARTMENT OF HEALTH** conducted an investigation of Plaintiff's grievance against UPMC – Western Psychiatric Institute and Clinic on December 13, 2010

6.      On January 18, 2011, **THE PENNSYLVANIA DEPARTMENT OF HEALTH,** made this statement regarding its investigation of Plaintiff's grievance: "The investigation revealed that after your request to leave, you were physically restrained and secluded, and were denied the right to refuse treatment. The investigation revealed that the facility did not comply with federal regulations related to a patient's right to refuse treatment and the physical restraint/seclusion of patients... As a result of the investigation the hospital has been

cited with violations of applicable State Licnsure and Federal

Medicare Regulations." (Attached hereto as Exhibit "**E**")

7.             On September 28, 2010 at approximately 8:00 PM, Plaintiff,

Richard Jarzynka, **voluntarily and entirely on his own initiative** went to

the Emergency Room (hereinafter referred to as "ER") of WPIC, a hospital

within the Defendant's (UPMC Health System) network of hospitals,

research and treatment centers, and health care facilities. [*the ER of WPIC is*

*also referred to, by some, as "The DEC"*]

8.             Plaintiff, upon arrival at WPIC's ER, **voluntarily and entirely**

**on his own initiative**, requested to be evaluated by a doctor for Restless Leg

Syndrome.

9.             Plaintiff chose to go to the ER at WPIC because he had

previously been diagnosed with, and treated for, Restless Leg Syndrome by

Dr. Prabir Mullick, a psychiatrist employed by WPIC and working within

Defendant's health system.

10.           Plaintiff also chose to go to the ER at WPIC because Plaintiff

was concerned that the medications Dr. Mullick had prescribed to treat

Plaintiff for bipolar disorder may have caused and/or exacerbated his

symptoms of Restless Leg Syndrome.

11.            Plaintiff told the employees of the ER that he was not experiencing any symptoms of bipolar disorder, but that he had come to the ER for treatment of Restless Leg Syndrome.

12.            Upon coming to the ER Plaintiff was given a copy of a "Notice of Patients' Rights and Bill of Patients' Rights and Responsibilities" (hereinafter referred to as "The Patients' Bill of Rights") by an employee of the ER. (Attached hereto as "Exhibit A")

13.            The Patients' Bill of Rights was printed on UPMC-WPIC letterhead and stated, among other things, "WPIC seeks to ensure the protection of each patient's physical and emotional health and safety. As a patient you . . . have the right to: file a grievance; participate in the development and implementation of your plan of care; make informed decisions regarding your care; be informed of your status, involved in care planning and treatment, and the ability to request or **refuse treatment** (*emphasis added* ); . . . receive care in a safe setting, free from verbal or physical abuse or harassment; . . . be free from restraints and seclusion of any form used as a means of coercion, discipline, convenience, or retaliation by staff."

14.         Plaintiff was interviewed by a social worker who is, and was

acting as, an employee of WPIC while plaintiff was waiting to be evaluated

by a doctor.

15.         Plaintiff told the social worker that he was not experiencing any

symptoms of bipolar disorder, that he was not having any thoughts of

harming anyone, that he was not experiencing hallucinations or delusions,

and that he was not thinking of hurting himself.

16.         Plaintiff and the social worker discussed the fact that Plaintiff

has a masters degree in psychology; that plaintiff worked for 15 years as a

counselor, psychotherapist, and program director; and that plaintiff has

written and published a book, titled, "Blessed with Bipolar."

17.         Plaintiff told the social worker that he was scheduled to speak

about his book to the National Alliance on Mental Illness and a Methodist

Church in Winchester, Kentucky on October 3, 2010 – 5 days after

Plaintiff's visit to the ER at WPIC.

18.         After being interviewed by the social worker, plaintiff returned

to the waiting room and waited to be evaluated by a doctor.

19.         At approximately midnight, after waiting in the ER waiting

room for 4 hours, Plaintiff, **having come to the ER voluntarily and**

**entirely on his own initiative**, decided that he wanted to leave the ER without being evaluated or treated by a doctor.

20.         Plaintiff approached an employee of WPIC (who was acting as an employee of WPIC and in furtherance of WPIC policies) near the door of the ER, told the employee that he was leaving the ER, and requested that the employee retrieve the belongings that had been confiscated from the plaintiff upon his arrival at the ER.

21.         The WPIC employee picked up a telephone and said to a WPIC supervisory employee on the other end of the phone, "Richard Jarzynka said that he is leaving. Is he ready to go?" (the supervisory employee was also acting in the capacity of a WPIC employee and in furtherance of WPIC policy)

22.         The employee at the door put down the phone and said to plaintiff, "You have to be evaluated by a doctor before you can leave."

23.         Plaintiff told the employee, "I came here voluntarily and now I am going to leave." Plaintiff then demanded that the employee retrieve Plaintiff's belongings and open the door so the plaintiff could leave.

24.         The employee refused plaintiff's demands and Plaintiff repeated that he had come to the ER voluntarily and that he had decided to

leave the ER voluntarily without being evaluated and demanded, again, that the employee retrieve plaintiff's belongings and open the door.

25.          The employee again refused.

26.          Plaintiff turned away from the employee and tried to turn the handle of the door, attempting to open the door and leave. The door was locked and the Plaintiff was unable to leave the ER.

27.          Plaintiff again stated that he had come to the ER voluntarily and demanded that the door be opened so plaintiff could leave the ER. The employee again refused.

28.          The employee then picked up the phone and requested that security personnel come to the scene to assist him.

29.          Plaintiff, realizing that he was being detained improperly and against his will, turned and kicked the locked door in an attempt to escape the ER. The door did not open and the plaintiff kicked it again. The door did not open.

30.          The door that Plaintiff kicked was the only possible means of escape available to the Plaintiff.

31.          A female employee of WPIC then opened the locked door in order to let into the ER another employee. As the door opened, the Plaintiff

quickly walked through the open doorway in an attempt to escape being improperly detained against his will.

32.          As Plaintiff crossed the threshold and attempted to leave the ER, three male employees of WPIC forcefully and aggressively grabbed the plaintiff around his arms, shoulders, and waist and pushed him back inside the ER.

33.          Plaintiff protested that he had come to the ER voluntarily and that he was now leaving voluntarily.

34.          Defendant's three male employees continued to forcefully and aggressively grab, hold, and push plaintiff. Plaintiff braced himself against the door and against a desk near the door.

35.          One of the male employees, who was forcibly detaining plaintiff against his will and preventing plaintiff from leaving the ER, yelled to the other employees who were forcibly, physically restraining plaintiff, and said, "We can go to the floor!" The employees, who were still grabbing, holding, and pushing plaintiff, aggressively attempted to physically force plaintiff to the floor. Plaintiff resisted and the employees were unable to force plaintiff to the floor.

36.          The employee again yelled to the others, "We can go to the floor!" And the three male employees, who were still grabbing, holding, and

pushing plaintiff, again aggressively attempted to physically force plaintiff to the floor. Plaintiff again resisted and the employees were unable to force him to the floor.

37.        The employee who had yelled, "We can go to the floor," now yelled for somebody to get a nurse to give the plaintiff "a shot" (of medication to sedate and chemically restrain the plaintiff.)

38.        Plaintiff, not wanting to be sedated, chemically restrained, and possibly made unconscious for many hours, said, "Okay, I quit."

39.        The employee who had called for the "shot" said, "First you have to show us that you are calm." Plaintiff said, "Okay, what do you want me to do?" The employee said, "I want you to walk with us down this hallway." The Plaintiff then began to walk calmly down the hallway with the three employees still holding plaintiff around the arms, shoulders, and waist.

40.        As the plaintiff was calmly walking down the hallway with the employees, one of the male employees violently shoved plaintiff from behind in his upper back and forcefully drove the plaintiff down the hallway.

41.        Plaintiff attempted to stop walking, braced himself, and attempted to protect himself against the employee's violent shove and push to plaintiff's upper back.

42.        One of the male employees who was restraining plaintiff yelled

at the employee who violently shoved plaintiff, told him to stop, and told the

employee that the plaintiff was cooperating and that it was not necessary to

shove plaintiff down the hallway.

43.        The male employees then forcefully pushed and wrestled

plaintiff through another door that led into another waiting room from which

there was no means of escape.

44.        Once inside the second waiting room, plaintiff asked one of the

employees, "What do you want me to do?"

45.        The employee pointed to a seclusion room and told the plaintiff

to walk into it.

46.        Plaintiff walked calmly to the seclusion room while still being

held around the arms, shoulders, and waist by the three male employees.

47.        The male employees stood in the doorway of the seclusion

room, preventing plaintiff from leaving the seclusion room.

48.        A female doctor arrived at the seclusion room and told plaintiff

that he would have to wait there to be evaluated by a doctor and that the

doctor would decide whether plaintiff could leave the ER.

49.        Four hours later a male doctor came to speak with plaintiff in

the seclusion room. Plaintiff told the doctor that he had come to the ER

because of increased symptoms of restless leg syndrome and that plaintiff

had not been experiencing any symptoms of bipolar disorder. Plaintiff also

told the doctor that he was not thinking of hurting himself, not hallucinating

or having delusions, and that he was not thinking of hurting anyone else.

Plaintiff stated that he merely wanted help with the symptoms of Restless

Leg Syndrome.

50.           The male doctor also asked about plaintiff's book, "Blessed

with Bipolar" and plaintiff's upcoming speaking engagement in Winchester,

Kentucky. Plaintiff showed the doctor a copy of his book.

51.           The male doctor recommended that plaintiff see a neurologist

and discharged the plaintiff at 4:00AM September 29, 2010 – eight hours

after plaintiff had - **voluntarily and entirely on his own initiative** - arrived

at the ER and four hours after plaintiff had requested to leave the ER.

52.           At no time during the events giving rise to this complaint was

plaintiff admitted to the hospital as an inpatient.

53.           At no time during the events giving rise to this complaint did

any doctor recommend that plaintiff be involuntarily admitted to the hospital

as an inpatient pursuant to Pennsylvania statutes.

voluntarily comes to the ER, requests an evaluation, and then decides to

leave prior to the evaluation; it is the policy of WPIC not to allow that

patient to leave the hospital without seeing a physician. The response further

states, "The purpose of the physician evaluation is to assure that there are no

immediate safety concerns. Safety officers were called after it was reported

that you were kicking the door in an attempt to leave." (Attached hereto as

"Exhibit B")

59.          Prior to kicking the door, Plaintiff had repeatedly requested that

WPIC employees open the door. Prior to kicking the door, Plaintiff had

repeatedly stated that he was a voluntary patient and had decided to leave

without being evaluated. Plaintiff kicked the door only after WPIC

employees repeatedly refused to open the door and were unlawfully

detaining plaintiff against his will.

60.          Pennsylvania law, including the Mental Health Procedures Act

("MHPA") (50 P.A. Code Sections 7101 – 7500), does not allow any

hospital to detain a <u>voluntary</u> patient in the ER against the patient's will

without following The MHPA's clearly stated  rules for involuntarily

examination and/or treatment (50 P.A. Code Section 7302). WPIC did not

follow – or even begin – that procedure during the events and circumstances

that give rise to this complaint.

61.         Plaintiff was examined involuntarily – and against his

expressed will – by Dr. Peter Murray, M.D., who was acting in his capacity

as an employee of Defendant, without Defendant having followed the

procedures demanded in the MHPA (50 Pa. Code 7302) for such involuntary

examination.

62.         Dr. Peter Murray, M.D.,  in his written report, (Attached hereto

as "Exhibit C") dated September 29, 2010, regarding his evaluation of

Plaintiff in WPICs ER, wrote the following: he described Plaintiff as an

"adult WM in neat, casual attire; pleasant." Dr. Murray's report stated that

Plaintiff's mood was "upset," and his affect "euthymic, broad." The report

states that Plaintiff's Thought Form / Associations were "organized." Dr.

Murray's report states that Plaintiff was "denying any desire to harm himself

or others," denying hallucinations, and was not having any "delusions," that

Plaintiff's orientation to time, place, and person was 'full," stated that

Plaintiff's Insight was "high" and Plaintiff's Judgment was "good," and

describes Plaintiff's recent and remote memory as "recalled consistently,"

Dr. Murray's report concludes that Plaintiff was displaying "no evident

lethality" and "appears medically stable for discharge."

63.  At all times relevant to this Complaint, Defendant's employees were acting as employees of Defendant and in furtherance of Defendant's policies.

64.  Under the doctrine of Respondeat Superior (also known as, Vicarious Liability) Defendant is liable for the actions of its employees which give rise to this complaint.

65.  Defendant's actions stated in this Count constitute willful misconduct and/or gross negligence.

66.  Defendant committed willful misconduct by preventing Plaintiff from leaving the ER, physically detaining him, and physically restraining him – all against the repeatedly expressed will of the Plaintiff - without following the procedures demanded by the Pennsylvania MHPA for involuntary examination and treatment. [50 Pa. Code Section 7302]

67.  Defendant, by preventing Plaintiff from leaving the ER, physically detaining him, and physically restraining him – all against the repeatedly expressed will of the Plaintiff - without following the procedures demanded by the Pennsylvania MHPA [50 Pa. Code Section 7302] failed to meet the standard of care of a reasonable hospital. The reasonable hospital treating mental disorders and mental health patients in Pennsylvania is required to be aware of – and follow – the clearly stated procedures in the

Pennsylvania MHPA. WPIC, in the events stated in this complaint, clearly did not follow the procedures of the MHPA.

68.        Doctors Vered Birmaher, M.D. and Peter Murray, M.D. (who are both employees of Defendant and who both examined Plaintiff while he was in the seclusion room of Defendant's ER) have stated in writing that employees of Defendant detained Plaintiff when he attempted to leave the ER, restrained Plaintiff, and took Plaintiff to "the seclusion room" of Defendant's ER. (Attached hereto as "Exhibit D")

## COUNT I

## VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE AMERICANS WITH DISABILITIES ACT (42.U.S.C. CHAPTER 126)

69.        Paragraphs 5 – 68 are incorporated within this Count as if fully set forth herein.

70.        Plaintiff is a person with a disability as defined by the Americans with Disabilities Act ("ADA"). [42. U.S.C. Sections 12102(1)(A), (B); 12102 (2)(A), (B)]

71.        Plaintiff was diagnosed with bipolar disorder in 1989 and has been in continuous treatment for the disorder since that time.

72.       Bipolar disorder substantially limits one or more major life activities of Plaintiff, including, sleeping, concentrating, thinking, and working.

73.       There is a record of the impairment that substantially limits Plaintiff's major life activities.

74.       Plaintiff is also substantially limited in the operation of major bodily functions, including neurological and brain functions.

75.       Plaintiff receives Social Security Disability Benefits as a result of having bipolar disorder.

76.       Defendant, at the time of the events and circumstances described herein, knew of Plaintiff's disability and treated him as a person with a disability.

77.       Defendant, being a network of hospitals, and WPIC, being one of those hospitals, are public accommodations subject to the provisions of the ADA. [42. U.S.C. 126 Section 12181 (7)(F)]

78.       Defendant, on September 28, 2010 and September 29, 2010, by the commission of the acts described herein, violated the Plaintiff's rights under the ADA pursuant to 42 U.S.C. Section 12182(a), and 42 U.S.C. Section (b)(1)(A) (ii).

79.         Plaintiff <u>voluntarily and entirely on his own initiative</u> sought an

evaluation at WPIC's ER on September 28, 2010.

80.         Plaintiff chose to leave WPIC's ER prior to being evaluated by

a physician.

81.         Defendant prevented Plaintiff from leaving the ER, detained

him against his will, physically restrained him, and put him into a seclusion

room against the clearly and repeatedly expressed will of the Plaintiff.

82.         Nothing in Pennsylvania or Federal Law authorizes Defendant

to detain a patient against his will when such patient has <u>voluntarily</u> sought

an evaluation at Defendant's ER and then chosen to leave the ER prior to

being evaluated by a physician – without following the procedures stated in

the Pennsylvania Mental Health Procedures Act ("MHPA") for <u>involuntary</u>

examination and treatment. [50 Pa. Code Section 7302]

83.         At no time during the events giving rise to this complaint did

any physician make a certification stating the need for an involuntary

examination of Plaintiff, nor did any county administrator issue a warrant for

such examination pursuant to 50 Pa. Code Section 7302 (a).

84.         It is Defendant's policy not to allow patients presenting

voluntarily at WPIC's ER to leave the ER voluntarily prior to being

evaluated by a physician. It is Defendant's policy to detain such a patient in

WPIC' ER against the expressed will of the patient. And it is Defendant's policy to detain voluntary patients in the WPIC ER without following the procedures demanded by the MPHA (50 Pa. Code 7302)

85.         Defendant's policy violates the Pennsylvania MHPA [50 Pa. Code Sections 7301 and 7302.]

86.         It is not the policy of Defendant's other hospitals that do not specialize in the treatment of psychiatric illnesses (as does WPIC) to detain patients in the ER when those patients have voluntarily come to the ER, requested an evaluation, and then decided to leave prior to being evaluated by a physician.

87.         Defendant's policy of not allowing voluntary patients to leave the ER at WPIC prior to being evaluated by a physican is based upon the fact that those patients are either known to have a psychiatric disability or are treated as having a psychiatric disability.

88.         Defendant assumes without sufficient evidence or clinical finding that any person who voluntarily presents at WPIC's ER and has a psychiatric disability (or is treated as having a psychiatric disability) is so likely to be a danger to himself or others that the person must be detained against his will even without using the procedures demanded by the MHPA for involuntary examination.

89.     Defendant has a policy of detaining voluntary patients in the ER at WPIC because Defendant either knows that the patient has a psychiatric disability or treats the patient as having a psychiatric disability.

90.     The difference between Defendant's policy regarding the detention of psychiatric patients presenting voluntarily at WPIC's ER and Defendant's policy of **not** detaining non-psychiatric patients at the ER's of Defendant's other hospitals constitutes discrimination on the basis of disability and is a violation of the ADA. [42 U.S.C.  Section 12182(a) and 42 U.S.C.  Section 12182 (b)(1)(A)(ii).

91.     Defendant violated Plaintiff's rights under the ADA [42 U.S.C. Section 12182 (a) and 42 U.S.C. Section 12182 (b)(1)(A)(ii)] by detaining him, physically restraining him, and putting him in a seclusion room against his will without following the procedures demanded by 50 Pa. Code Section 7302 for an involuntary examination and/or treatment.

92.     Defendant violated Plaintiff's rights under 42 U.S.C.  Section 12182(b)(1)(A)(ii) of the ADA because Defendant subjected Plaintiff (on the basis of his disability) to "a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded" by Defendant to individuals who present (for treatment) at it's other hospitals' ER's who do

not have a psychiatric disability and/or are not treated as having a psychiatric disability.

93.            Defendant violated Plaintiff's rights under the ADA [42 U.S.C. Section 12182 (a) because Defendant denied Plaintiff (on the basis of his disability) the "full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations" that Defendant affords to individuals who do not have a disability (and/or are not treated as having a disability) who present for treatment at Defendant's other hospitals' ER's.

           WHEREFORE, Plaintiff requests judgment against the Defendant for Violation of the Americans with Disabilities Act and requests damages in excess of $75,000, punitive damages, and any further damages that are deemed appropriate by this Court.

## COUNT II

## FALSE IMPRISONMENT

94.            Paragraphs 5 through 68 are incorporated into this Count as though fully set forth herein.

95.     Plaintiff voluntarily and entirely on his own initiative entered the ER of WPIC and requested an evaluation for symptoms of restless leg syndrome.

96.     After spending four hours in the waiting room of WPIC's ER, Plaintiff told employees of WPIC that he had decided to leave the ER without an evaluation.

97.     Employees of Defendant, acting in their capacity as employees of Defendant, told Plaintiff that he could not leave the ER.

98.     Plaintiff was aware that he was being detained against his will.

99.     Plaintiff attempted to leave the ER, but the door was locked.

100.    Plaintiff repeatedly requested that employees of Defendant open the door and allow the Plaintiff to leave. Employees of Defendant repeatedly refused to open the door and allow Plaintiff to leave.

101.    Plaintiff attempted to kick the door open in an attempt to escape the unlawful detention inflicted upon him by Defendant, but the door did not open.

102.    There was no other means of escape available to the Plaintiff.

103.    Three male employees of Defendant, acting in their capacity as employees of Defendant and in furtherance of Defendant's policies,

physically restrained Plaintiff and forcefully and aggressively prevented him from leaving the ER.

104.     Plaintiff was aware that he was being forcefully prevented from leaving the ER against his will.

105.     Defendant had no legal right to detain Plaintiff against his will without following the procedures demanded by the Pennsylvania MHPA. [50 Pa. Code Section 7302]

106.     Defendant prevented Plaintiff from leaving and physically restrained him without following the procedures demanded by the Pennsylvania MHPA. [50 Pa. Code Section 7302]

107.     WHEREFORE, Plaintiff demands judgment against Defendant for False Imprisonment and requests damages in excess of $75,000, punitive damages, and whatever additional damages may be deemed appropriate by this Court.

# COUNT III

# BATTERY

108.    Paragraphs 5 through 68 are incorporated into this Count as though fully set forth herein.

109.    After Plaintiff attempted to escape the false imprisonment inflicted upon him by Defendant, three male employees of Defendant forcefully and aggressively grabbed Plaintiff around his shoulders, arms, and waist and physically restrained him against his will.

110.    By forcefully and aggressively grabbing Plaintiff around his shoulders, arms, and waist against Plaintiff's will; holding, pushing, and shoving Plaintiff; and physically restraining Plaintiff, the three male employees of Defendant made a harmful and offensive contact with the Plaintiff and that contact resulted from acts intended to cause the Plaintiff to suffer such a contact.

111.    The three male employees of Defendant, while still physically restraining Plaintiff, twice attempted to forcefully and aggressively push the Plaintiff to the floor.

112.    One of the three male employees of Defendant called for a nurse to give Plaintiff "a shot" to sedate him.

113.          Plaintiff then walked calmly down a hall at the direction of one

of the three male employees while the employees continued to hold and

restrain Plaintiff.

114.          Another one of the three male employees violently shoved

Plaintiff from behind in Plaintiff's upper back and forcefully pushed

Plaintiff down the hallway. One of the other three male employees yelled at

the employee who was shoving Plaintiff, told him that it wasn't necessary to

shove the Plaintiff, and said, "He (*Plaintiff*) was walking on his own."

115.          The three male employees of Defendant then wrestled Plaintiff

through a doorway and directed him into a seclusion room where he

remained for approximately four hours, waiting to be evaluated - against his

will - by a doctor.

116.          All of the above-mentioned physical contacts made by

Defendant's employees with the person of the Plaintiff constituted harmful

and/or offensive contacts with Plaintiff and such contacts all resulted from

acts intended to cause the Plaintiff to suffer such a harmful and/or offensive

contact.

117.          These acts of Defendant's employees constituted willful

misconduct and/or gross negligence.

WHEREFORE, Plaintiff requests judgment against Defendant for Battery and damages in an amount in excess of $75,000, punitive damages, and any further damages that this Court deems appropriate.

## COUNT IV

## VIOLATION OF PLAINTIFF'S RIGHTS UNDER

## 42 CFR 482.13(b)

118.    Paragraphs 5 through 68 are incorporated in this Count as though fully set forth herein.

119.    42 CFR 482.13(b) states, "The patient . . . has the right to make informed decisions regarding his or her care. **The patient's rights include** being informed of his or her health status . . . and **being able to request or refuse treatment." (emphasis added)**.

120.    On September 28, 2010, Plaintiff voluntarily went to Defendant's ER at WPIC and requested to be evaluated for Restless Leg Syndrome.

121.    After being in Defendant's ER waiting room for four hours, Plaintiff told Defendant's employee that he had decided to

refuse treatment, as is his right under 42 CFR 482.13(b), and
requested that the employee retrieve Plaintiff's confiscated
belongings and open the locked to door to allow Plaintiff to
leave.

122.    Defendant's employee, following Defendant's policy, refused
to allow Plaintiff to leave, thus violating Plaintiff right to refuse
treatment.

123.    Defendant detained and restrained Plaintiff and kept him in a
seclusion room for four hours.

124.    The Pennsylvania Department of Health investigated this
incident and found that Defendant denied Plaintiff his right to
refuse treatment. (Exhibit "E")

125.    The Pennsylvania Department of Health cited Defendant with
violations of State Licensure and Federal Medicare regulations
as a result of Defendant denying Plaintiff his right to refuse
treatment. (Exhibit "E")

126.

WHEREFORE, Plaintiff requests judgment against
Defendant for Violation of Plaintiff's right to refuse
treatment under 42 C.F.R. 482.13(b) and requests

damages in an amount in excess of $75,000, punitive

damages, and any further damages that this Court deems

appropriate.

## COUNT V

## VIOLATION OF PLAINTIFF'S RIGHTS UNDER

## 42 CFR 482.13 (e)

127.     42 CFR 482.13(e) states, "All patients have the right to be free

from physical or mental abuse and corporal punishment. **All**

**patients have the right to be free from restraint or seclusion,**

**of any form,** imposed as a means of coercion, discipline,

convenience, or retaliation by staff. Restraint or seclusion may

only be imposed to ensure the immediate physical safety of the

patient, a staff member, or others and **must be discontinued at**

**the earliest possible time." (emphasis added.)**

128.     42 CFR 482.13(e)(5) states, "(A hospital's) use of restraint

must be in accordance with the order of a physician or other

licensed independent practitioner who is responsible for the

care of the patient as specified under 482.12(c) and authorized

to order restraint or seclusion by hospital policy in accordance with state law . . ."

129.    After Defendant denied Plaintiff his right to refuse treatment on September 28, 2010, three employees of defendant physically restrained Plaintiff in order to prevent him from leaving the hospital. They then physically forced him into a seclusion room where he was compelled to remain for four hours. In so doing, Defendant violated Plaintiff's right under 42 CFR 482.13(e) to be free from restraint or seclusion.

130.    Defendant's restraint and seclusion of Plaintiff was **_not_** ordered by an authorized physician or other licensed independent practitioner who was responsible for the care of Plaintiff. Thus, Defendant violated Plaintiff's rights under 42 CFR 482.13(e)(5).

131.    The Pennsylvania Department of Health investigated this incident and found that Defendant denied Plaintiff his right to be free from restraint or seclusionn42 CFR 482.13(e). (Exhibit "E")

132.    The Pennsylvania Department of Health cited Defendant with violations of State Licensure and Federal Medicare regulations

as a result of Defendant denying Plaintiff his right to be free

from restraint or seclusion under 42 CFR 482.13(e). (Exhibit

"E")

WHEREFORE, Plaintiff requests judgment against

Defendant for Violation of Plaintiff's right to refuse treatment under

42 C.F.R. 482.13(b) and requests damages in an amount in excess of

$75,000, punitive damages, and any further damages that this Court

deems appropriate.


Respectfully submitted,

_____

Richard Jarzynka, Pro Se Plaintiff
109 Crestwood Drive
Pittsburgh, PA 15209
412-486-8833